# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF PUERTO RICO

**LEONIDES NIEVES BORGES et al.,**

**Plaintiffs,**

**v.**                                                      **CIVIL NO. 15-1875 (GAG)**

**EL CONQUISTADOR PARTNERSHIP, et**

**al.,**

**Defendants.**

## OPINION AND ORDER

Plaintiffs Leonides Nieves-Borges, Mahalia Falco, and conjugal partnership Nieves-Falco ("Plaintiffs") sued Defendants El Conquistador Partnership LP SE, El Conquistador Waldorf Astoria Resort, and El Conquistador Resort ("Defendants") for sexual harassment and retaliation under Title VII of the Civil Rights Act of 1964 ("Title VII"), Puerto Rico Law 17 of April 22, 1988 ("Law 17"); Puerto Rico Law 69 of June 8, 1985 ("Law 69"); Puerto Rico Law 100 of June 30, 1959 ("Law 100"); and damages under Articles 1802 and 1803 of the Puerto Rico Civil Code. (Docket No. 2).

Pending before the Court is Defendants' motion for summary judgment. (Docket No. 33). Plaintiffs opposed and submitted a statement of additional facts (Docket Nos. 41 & 46). Defendants replied and moved to strike Plaintiffs' opposition and statement of facts for failing to comply with Federal Rule of Civil Procedure 56 and its local counterpart. (Docket No. 52). Plaintiffs sur-replied. (Docket No. 61). After considering the parties' submissions and pertinent law, the Court **GRANTS** Defendants' motion to strike at Docket No. 52 and motion for summary judgment at Docket No. 33.

I.    **Defendants' Motion to Strike**

Defendants ask the Court to strike Plaintiffs' opposition and additional statement of facts (Docket No. 41) and opposition to Defendants' motion for summary judgment (Docket No. 46) for failing to comply with Local Rule 56.  For the reasons discussed below, Defendants' Motion is **GRANTED**.

A.  <u>Local Rule 56</u>

Local Rule 56(c) instructs that "[a] party opposing a motion for summary judgment shall submit with its opposition a separate, *short*, and *concise* statement of material facts."  L.Cv.R. 56(c) (emphasis added).  This opposing statement "shall admit, deny or qualify the facts supporting the motion for summary judgment by reference to each numbered paragraph of the moving party's statement of material facts."  <u>Id.</u>  Moreover, "[u]nless a fact is admitted, the opposing statement shall support each denial or qualification by a record citation."  <u>Id.</u>  Finally, Local Rule 56(c) indicates that the opposing statement "may contain *in a separate section* additional facts, set forth in numbered paragraphs and supported by a record citation" as required by Local Rule 56(e).  <u>Id.</u> (emphasis added).  If the facts are not properly controverted, they shall be deemed admitted. L.Cv.R. 56(e).

Local Rule 56 procures "to relieve the district court of any responsibility to ferret through the record to discern whether any material fact is genuinely in dispute."  <u>CMI Capital Market Inv. v. González–Toro</u>, 520 F.3d 58, 62 (1st Cir. 2008). "It prevents parties from 'improperly shift[ing] the burden of organizing the evidence presented in a given case to the district court.'"  <u>Carreras v. Sajo, Garcia & Partners</u>, 596 F.3d 25, 31 (1st Cir. 2010) (citing <u>Mariani–Colón v. Dep't of Homeland Sec.</u>, 511 F.3d 216, 219 (1st Cir. 2007)).  Therefore, "the rule is important to the

functioning of the district court," and the First Circuit has consistently held that litigants ignore it at their peril. Id.; Caban Hernandez v. Philip Morris USA, Inc., 486 F. 3d 1, 7 (1st Cir. 2007).

### 1. Short and Concise Statement

Local Rule 56 requires a party opposing summary judgment "to submit a *separate*, *short*, and *concise* statement of material facts admitting, denying or qualifying the corresponding facts that support the motion, with record citations in support." Acevedo-Parrilla v. Novartis Ex-Lax, Inc., 696 F.3d 128, 137 (1st Cir. 2012) (citing L.Cv.R. 56(c)) (emphasis added). Although "[t]here is no mechanical rule rendering a long statement insufficiently 'short' and 'concise' . . . . [b]urying the district court in a mass of supposedly material contested facts, many irrelevant and many unsupported by citations, creates the very morass from which the rule aims to protect the district judge." Alsina-Ortiz v. Laboy, 400 F.3d 77, 81 (1st Cir. 2005) (finding that a sixty page response to a four page statement of facts was not short and concise).

Despite the lack of a mechanical rule as to what amounts to a short and concise statement of facts, Plaintiffs' opposing statement is anything but short and concise. Defendants' Statement of Uncontested Material Facts ("DSUMF") spans 188 paragraphs and twenty-seven (27) pages. (See Docket No. 32). Each paragraph contains a single fact, properly cited in a clear and understandable manner. On the other hand, Plaintiffs' submission stretches for seventy-two (72) pages. (See Docket No. 41). As Defendants argue, the document suffers from "freewheeling, rambling paragraphs that sometimes span several pages, interspersed with conclusory allegations and problematic record citations that alternatively purport to refer to the record, exhibits, depositions, other docket entries, or make reference to numerous other paragraphs (in no particular order)." (Docket No. 50 at 3).

For example, paragraph 19 is seven pages long.  (<u>See</u> Docket No. 41 at 8-14).  One of those pages contains one of numerous examples of what the Defendant means by "freewheeling and rambling denials, interspersed with conclusory allegations":

> This statement Mr. Nieves have (sic) never seen it before. During that period of time Mr. Nieves did anything (sic) wrong. Mr. Nieves had an evaluation from Gamal Elfaikih dated February, 2013 in which he gave me a score of 94.73%. The evaluation was rated as an above. Expectations. (sic) The facts stated in that document never took place. Mr. Nieves has no knowledge pertaining that document. (sic) That document never was discussed with Mr. Nieves. Mr. Nieves never signed it. That document was fabricated because the initial sentence on the document states I would like to congratulate you for the improvements observed at the most recent integrity report carried out on April 2013.
>
> <u>Id.</u> at 11.

This denial buries the court "in a mass of supposedly material contested facts, many irrelevant and many unsupported by citations, [and] creates the very morass from which the rule aims to protect the district judge."  <u>Alsina-Ortiz</u>, 400 F.3d at 81.  For that reason, the court will disregard every denial and qualification except those in paragraphs 7, 11, 14, 32, 132, 141 as improperly controverted, and admit the rest of the DSUMF as uncontested.

### 2. *Specific Citations to the Record*

Local Rule 56(e) allows the court to "disregard any statement of fact not supported by a *specific* citation to record material."  Here again, Plaintiffs fail to comply with Local Rule 56.  For example, to support the previously cited denial on page 11, Plaintiffs invite the court to see "Exhibit 2 attached to this document, at Plaintiffs' Exhibit 1 attached to the deposition, page 57, lines 7-19; and Exhibit 2, page 402, lines 12-14."  (Docket No. 41 at 11).  This maze of exhibits is not a specific citation.  The Court cannot decipher where this citation leads to, or which of the quoted fragment's numerous allegations it supports.  Moreover, even assuming it refers to either Exhibit 1 or 2, it is inaccurate because neither Exhibit includes a page 57.

In other instances, Plaintiffs cross-reference other improperly cited denials. For example, in paragraph 86, Plaintiffs state, "Plaintiffs hereby deny paragraph 86, docket and document 32; with the following facts: Plaintiffs hereby includes in this part the facts stated in paragraphs 1, 64, 44, 42, 43, 34, 3, 8, 26, 31, 39, 47, 19, 21, 78, 146, 147, 151, 152, 153, 154, 158, 161, 163, and 177; paragraph 19, page 12, lines 4-15 of this document." (Docket No. 41 at 39). Again, this is not specific—much less short or concise—and it betrays the Rule's goal "to relieve the district court of any responsibility to ferret through the record to discern whether any material fact is genuinely in dispute." CMI Capital Market Inv., 520 F.3d at 62. Therefore, in addition to refusing to consider Plaintiffs' denials because they are neither short nor concise, the Court refuses to navigate Plaintiffs' perplexing maze of citations and admits all but paragraphs 7, 11, 14, 32, 132, 141 of the DSUMF as uncontroverted because of Plaintiffs' inadequate citations.

### 3. Additional Statement of Facts

Local Rule 56(c) allows an opposing party to submit additional facts "*in a separate section*." L.Cv.R. 56(c) (emphasis added). These facts must also be "supported by a record citation as required by subsection (e)." Id. A separate section serves two purposes: "to allow the moving party to reply to those additional facts and to allow the court to easily determine the disputed facts." Malave-Torres v. Cusido, 919 F. Supp. 2d 198, 207 (D.P.R. 2013). Thus, "[t]he plain language of the rule specifically requires that additional facts be put forward in a 'separate section.'" Carreras, 596 at 32 (holding that district court acted within its discretion when it disregarded additional facts not contained in a separate section). And for that reason, "a party may not include numerous additional facts within its opposition to the moving party's statements of uncontested facts." Malave-Torres, 919 F. Supp. 2d at 207.

Here, Plaintiffs include numerous additional facts within their opposition. For example, in just one of the seven pages that comprise paragraph 19, Plaintiffs state at least ten new facts. (See Docket No. 41 at 9). The Court does not bear the burden of organizing the Plaintiffs' evidence. See Carreras, 506 F.3d at 31. Accordingly, it will disregard those additional facts not listed separately.

The Court notes that Plaintiffs included a separate section of additional facts. Defendants properly controverted each of these facts except two, paragraphs 189 and 203, which the Court will deem admitted.

B. Local Rule 56 and Plaintiffs' Opposition to Defendants' Motion for Summary Judgment

The Court "consider[s] waived arguments 'confusingly constructed and lacking in coherence.'" Rodriguez v. Municipality of San Juan, 659 F.3d 168, 175 (1st Cir. 2011) (citing United States v. Eirby, 515 F.3d 31, 36 n. 4 (1st Cir. 2008)). Because judges "are not mind-readers . . . parties must spell out their issues clearly, highlighting the relevant facts and analyzing on-point authority." Id. Judges "rely on lawyers and litigants to submit briefs that present suitably developed argumentation with appropriate citations to applicable precedents and to the record below." Reyes-Garcia v. Rodriguez & Del Valle, Inc., 82 F.3d 11, 12-13 (1st Cir. 1996) (referring to a submission where "[t]he merits section of the brief lacked developed argumentation, eschewed any meaningful citations to pertinent legal authority, omitted particularized references to the record evidence" among other flaws.). Where a party fails to do so, it "cannot expect a trial court to do his homework for him." McCoy v. Massachusetts Inst. of Tech., 950 F.2d 13, 22–23 (1st Cir. 1991) (referring to 12(b)(6) motion); see Alberti v. University of Puerto Rico, 869 F. Supp. 2d 231 (D.P.R. 2012) (applying McCoy to summary judgment).

Defendants contend that Plaintiffs' opposition (Docket No. 46) is "so poorly drafted as to make it unintelligible at times." (Docket No. 52 at 6). Indeed, as illustrated below, "the document changes randomly from the first to third-person account, leaves some sentences unfinished, includes perplexing punctuation, and makes numerous non-sequiturs, contains generic and insufficient references to the record." Id.

For example, the brief's 33 page-long statement of facts confuses the reader by referencing Plaintiffs in the third and first person: "In August 2007 . . . Luis Álvarez invites Mr. Nieves [Plaintiff] to go to lunch at the Rain Forest Café at Down Town (sic) Disney and told me [Plaintiff] that . . . ." (Docket No. 46). This is not an isolated event. See, e.g., id. at 4, 8, 30.

Plaintiffs' facts and opposition also contradict each other. In the relevant facts section of their opposing brief, Plaintiffs say that Plaintiff Nieves was laid off in 2001 due to a decrease in occupancy after the 9/11 terrorist attacks. (Docket No. 52 at 2). Plaintiffs say this, despite denying it in paragraph 8 of their opposing facts. (Docket No. 41 at 5-6).

More importantly, Plaintiffs fail to "present suitably developed argumentation with appropriate citations." Reyes-Garcia, 82 F.3d at 12-13. Discussing the law and its application regarding unwelcomed sexual advances, Plaintiffs write an unfinished sentence followed by an imprecise application to the facts: "While the question whether particular conduct was indeed unwelcome presents difficult problems of proof and turns largely on credibility determinations committed to the trier of fact. Evidence of sexual advances unwelcome (sic) is at paragraphs 4, 8, 11, 10, 14, 15, 32, and 47 of this document." (Docket No. 46 at 33).

Again, this lack of clarity is hardly an isolated event. When arguing that Defendants' conduct was severe and pervasive, Plaintiffs simply state: "Mr. Nieves establishes that it was severe and pervasive at paragraphs 4, 7, 10, 9, 8, 12, 11, 13, 14, 15, 16, 17, 19, 47, 41, 21, 23, 27,

50, and 52 of this document." (Docket No. 46 at 42). Similarly, when Plaintiffs argue pretext, they merely say that "Plaintiff establishes the requirement of pretext at paragraphs 30, 24, 30, 31 and 26, of this document." Id. at 48. This argumentation is neither "suitably developed" nor appropriately cited.

To make matters worse, Plaintiffs also "make[] reference to alleged portions of the record that are simply not there." (Docket No. 52 at 6). Defendants point out, and the Court has corroborated, that "the Opposition makes reference to Exhibits 1, 2, and 16 of 'this document,' where Docket [No.] 46 has no exhibits. Also, Plaintiffs make purported reference to Exhibit 16, pages 92, 95, 96, and 97. Even assuming that they were referring to Exhibit 16 of Docket #41, the references do not exist, inasmuch as the exhibit is only three (3) pages long." Id. at 6 n.1.

Simply put, Plaintiffs cannot expect the Court to do their homework and pick apart a 55-page opposition in search of coherent arguments. McCoy, 950 F.2d 13, 22–23 (1st Cir. 1991). Plaintiffs have submitted an opposition that is beyond "confusingly constructed and lacking in coherence." Eirby, 515 F.3d at 36 n. 4. It is, as Defendants point out, "unintelligible at times." A party's argument should guide the Court, not puzzle it. Thus, the Court will strike Plaintiffs' opposition and deem Defendants' motion unopposed. See Rodriguez, 659 F.3d at 175.

## II.     Relevant Factual Background

Plaintiff Nieves began working at El Conquistador Hotel in 1993 and worked as a Food and Beverage manager when he was terminated in 2015. (Docket No. 32 ¶¶1, 13). Around August 2014, Plaintiff Nieves's supervisor, Alfredo Amengual, informed him that he and other employees would be rotated from their current position in the Hotel's Palomino Island outlet to the Bella Vista outlet. Id. ¶23. It was customary to rotate Plaintiff Nieves and other Food and Beverage employees among the Hotel's different food and beverage outlets. Id. ¶¶15-16. Nevertheless, upon Plaintiff

Nieves's objection, Amengual explained that the Bella Vista outlet faced service challenges and would benefit from Plaintiff Nieves's experience. Id. 32 ¶24. Moreover, Amengual told Plaintiff Nieves that the Hotel periodically made managerial changes, and that Plaintiff Nieves was not the only manager reassigned to a different area. Id. ¶26. However, Plaintiff Nieves claims that Amengual also told him that Luis Álvarez, the Director of Human Resources, wanted him transferred to Bella Vista. (Docket Nos. 41 ¶189; 50 ¶189). Nevertheless, Plaintiff Nieves admits to lack personal knowledge as to who was involved in the decision to transfer him. (Docket Nos. 41 ¶189; 50 ¶189).

*Plaintiff Nieves's First Complaint*

After the transfer, Plaintiff Nieves reported to the State Insurance Fund, where he alleged that the rotation amounted to workplace harassment by Álvarez and Amengual. (Docket No. 32 ¶31). Shortly after, on September 30, 2014, Plaintiff Nieves filed an internal complaint of sexual harassment against Álvarez. Id. ¶33. In his complaint, Plaintiff alleged that Álvarez subjected him to sexual harassment and a hostile work environment for the past thirteen years. Id. This was the Hotel's first notice of the alleged sexual harassment. Id. ¶34.

The Hotel has a policy against sexual harassment, which it notifies employees through training, postings, and periodic re-distribution of the policy itself, as well as a code of ethics that prohibits harassment and describes internal grievance procedures. Id. ¶¶3-4. While he worked at the Hotel, Plaintiff Nieves received a copy of the Hotel's employee handbook, code of ethics, and non-harassment policy, and attended trainings and seminars regarding sexual harassment. Id. ¶¶2-7.

Plaintiff Nieves's September 2014 complaint alleged that Álvarez supervised him unfairly, roamed around verifying his work, criticized his performance, and disciplined him. Id. ¶37. As a

9

result, Plaintiff Nieves felt "bullied" by Álvarez.  Id. ¶38.  Moreover, Plaintiff Nieves alleged that Amengual abused his authority, and complained about his supervision style and evaluations of Plaintiff Nieves's performance.  Id. ¶¶39-40.

An investigator interviewed Plaintiff Nieves and other witnesses and employees regarding the complaint.  Id. ¶43.  In his interview, Plaintiff Nieves admitted that he had not told anyone about the alleged harassment prior to filing the complaint out of fear of losing his job.  Id. ¶¶50-51.  More importantly, he specified that the complaint contained all of his allegations against Álvarez and Amengual.  Id. ¶52.

The investigation concluded that Álvarez did not sexually harass Plaintiff Nieves.  Id. ¶70. In fact, no witnesses or evidence corroborated Plaintiff Nieves's allegations.  Id. ¶64.  On the other hand, despite finding that he was performing his duties, Amengual was counseled to be more attentive and courteous towards his employees, and to have a witness present during his private interactions with Plaintiff Nieves.  Id. ¶¶75-77.  Plaintiff Nieves returned to work in October 2014. Id. ¶41.  The ensuing months were turbulent.

*Plaintiff Nieves's Disciplinary Actions and Second Complaint*

In January 2015, the Hotel suspended Plaintiff Nieves for two weeks after a female co-worker complained to Human Resources that Plaintiff Nieves asked her to file a false sexual harassment claim against Amengual.  Id. ¶¶78-80.  The Hotel concluded that Plaintiff Nieves's actions were grounds for immediate termination.  Id. ¶84.  Nonetheless, the Hotel suspended him because of his years of service.  Id.

In February 2015, Plaintiff Nieves emailed Human Resources that he felt "overwhelmed" by his work, harassed by Amengual, and that Amengual was persecuting all of Bella Vista's managers and supervisors.  Id. ¶94.  The issue giving rise to this complaint was an email by

Amengual requiring all Food & Beverage managers to be present "on the floor" during peak hours. Id. However, interviews with several managers revealed that none felt offended or perceived that Amengual acted disrespectfully or unprofessionally. Id. ¶95. Despite these findings, days after complaining to Human Resources, Plaintiff Nieves filed a complaint against the Hotel alleging sexual harassment and retaliation before the Equal Employment Opportunity Commission. Id. ¶96. The Hotel was notified of the charge on February 18, 2015. Id. ¶100.

The EEOC complaint lists three instances of alleged sexual harassment in the 300 days before filing the complaint. The first occurred on May 26, 2014, when Álvarez called Plaintiff Nieves at 7:47 p.m. to invite him to his residence because he wanted to show him "something." (Docket No. 32-35 at 3). The second occurred on July 3, 2014, when Álvarez called Plaintiff Nieves at 6:15 p.m. and invited him to his home because he wanted to discuss work-related matters regarding other employees' shifts and probation. Id. Finally, on August 19, 2014, at 8:20 a.m. in the Hotel's mezzanine, Álvarez again invited Plaintiff Nieves to his house "to socialize." Id. During this encounter, Álvarez allegedly touched Plaintiff Nieves's hands in a sexual manner, gazed his body top-down, and invited him to drinks after work. Id.

Three months after filing the complaint, in May 2015, the Hotel disciplined Plaintiff Nieves again for deliberately altering the Hotel's payroll records to make it seem as if a supervisor had worked longer hours. Id. ¶104. Although the Hotel considered this a ground for immediate termination, again it desisted from firing Plaintiff Nieves. Id. ¶106.

*Caribe Hilton Incident and Plaintiff Nieves's Termination*

On July 16, 2015, Plaintiff Nieves informed his supervisor that he would miss work the next day because he was ill. Id. ¶106. Nevertheless, the next day, Plaintiff Nieves attended an event of Nativo Rumeliers, a business that he founded in 2013, at the Caribe Hilton. Id. ¶108-110.

Upon hearing that Plaintiff Nieves was at the Hilton, the Hotel's Human Resources Director, Olga Martínez, traveled there to confirm. Despite reporting he was too sick to work that day, Plaintiff Nieves was indeed at the Hilton. Id. ¶¶112-13. Thus, the next day, Martínez and Amengual called Plaintiff Nieves to the Food and Beverage Director's Office to confront him. Id. ¶ 117. Plaintiff Nieves reacted belligerently, claiming that it was not the Hotel's business what he did with his sick time. Id. ¶118. Martínez informed him that working at the private event after calling in sick to work was a conflict of interest, and suspended Plaintiff Nieves pending a further investigation. Id. ¶¶119, 121.

During the meeting on July 17, Plaintiff Nieves did not present or attempt to present any medical evidence. Id. ¶120. He later claimed to have gone to the doctor on July 16, 2015. Id. ¶122. However, his doctor admitted that he did not see Plaintiff Nieves until July 17, 2015—the same day he was confronted for missing work. Id. The doctor explained that he wrote the wrong date at Plaintiff Nieves's request. Id. ¶123.

On July 21, 2015, the Hotel terminated Plaintiff Nieves for lying to the Hotel regarding his illness to attend a private business event. Id. ¶126. This violated the Hotel's Code of Ethics, Conflict of Interest Policies, and Employee Manual, which lists faking an illness as a cause for immediate termination. Id. ¶¶127-29. Moreover, this constituted the eleventh disciplinary action against Plaintiff since he began working in 1993. Id. ¶20. Because of this incident and Plaintiff Nieves's disciplinary record, Martínez recommended terminating his employment. Id. ¶130.

*Plaintiff Nieves's Alleged Harassment*

After his termination, Plaintiff Nieves filed this complaint alleging hostile work environment and retaliation. He claims that Álvarez touched him "a gazillion" times between 2001 and 2014, but that he did not complain earlier because he feared for his job security. Id. ¶167.

Plaintiff Nieves's deposition shows instances of alleged unwanted touching and perceived sexual advances. (See, e.g. Docket No. 32-1, 32-2). Plaintiff Nieves testified that Álvarez stared at him in a predatory manner at the cafeteria in October 2014. (Docket No. 41-4 at 8). He also testified that Álvarez would say to him, "I'm watching you" and make a gesture toward his eyes and then at Plaintiff Nieves, who interpreted this to mean, "I'm going to dominate you, I'm going to dominate you. You're going to be mine." (Docket No. 32 ¶152-53). Furthermore, Plaintiff Nieves also interpreted Álvarez's alleged comments that he would not last long in Palomino after he was transferred, as well as his request to take care of his mother when she visited Palomino, to be sexual in nature. Id. ¶¶154-57. Plaintiff Nieves also perceived as flirting that Álvarez "allegedly told him that he didn't see him around anymore, and that he hoped he was doing things properly." Id. ¶141. Likewise, Plaintiff Nieves also perceived as sexual Álvarez's invitation to hang out with friends, based on the way Álvarez told and grabbed him when he spoke. (Docket No. 32-1 at 30).

Other witnesses also point to instances of alleged unwanted touching. Plaintiff Nieves's wife claims that she saw Álvarez hug the Plaintiff on three occasions between 2007 and 2010, at the Hotel's Christmas party. (Docket No. 32 ¶¶183-85). She also claims that Álvarez stared at him and shook his hands. Id. Another witness allegedly saw Álvarez run his hand down Plaintiff Nieves's back once around 2008. (Docket No. 32-45 at 46). Similarly, another witness alleged seeing Álvarez massage Plaintiff Nieves's shoulders and back, but had no idea whether it was sexual. (Docket No. 32-44 at 2).

Nevertheless, in his deposition, Plaintiff Nieves clarified that Álvarez never proposed to have sex, that he did not know why Álvarez invited him to socialize, that he only saw Álvarez occasionally and that he has no evidence that he would have been promoted or received better pay

increases but for Álvarez's interference.  (Docket No. 32 ¶¶132-39, 141-47, 152-67, 181-82).  In fact, he received a salary increase on July 4, 2015, less than three weeks before he was terminated. Id. ¶15-18.  Moreover, the undisputed facts show that Álvarez was friends with various managers and socialized with them outside of work, and would also host parties at his home and invite employees.  Id. ¶148-149.

## III.    Standard of Review

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  See FED.R.CIV.P. 56(a).  "An issue is genuine if 'it may reasonably be resolved in favor of either party' at trial, and material if it 'possess[es] the capacity to sway the outcome of the litigation under the applicable law.'" Iverson v. City of Boston, 452 F.3d 94, 98 (1st Cir. 2006) (alteration in original) (internal citations omitted).  "The movant must aver an absence of evidence to support the nonmoving party's case. The burden then shifts to the nonmovant to establish the existence of at least one fact issue which is both genuine and material." Maldonado–Denis v. Castillo–Rodriguez, 23 F.3d 576, 581 (1st Cir. 1994).  The nonmovant may establish a fact is genuinely in dispute by citing particular evidence in the record or showing that either the materials cited by the movant "do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." FED.R.CIV.P. 56(c)(1)(B).  If the court finds that some genuine factual issue remains, the resolution of which could affect the outcome of the case, then the court must deny summary judgment.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

When considering a motion for summary judgment, the court must view the evidence in the light most favorable to the non-moving party and give that party the benefit of any and all reasonable inferences. Id. at 255. Moreover, at the summary judgment stage, the court does not make credibility determinations or weigh the evidence. Id. Summary judgment may be appropriate, however, if the non-moving party's case rests merely upon "conclusory allegations, improbable inferences, and unsupported speculation." Forestier Fradera v. Mun. of Mayaguez, 440 F.3d 17, 21 (1st Cir. 2006) (quoting Benoit v. Technical Mfg. Corp., 331 F.3d 166, 173 (1st Cir. 2003)).

Although the First Circuit "has held repeatedly that the district court in Puerto Rico is justified in holding one party's submitted uncontested facts to be admitted when the other party fails to file oppositions in compliance with local rules. . . . [t]his, of course, does not mean the unopposed party wins on summary judgment." Fontanez-Nunez v. Janssen Ortho LLC, 447 F.3d 50, 55 (1st Cir. 2006) (citations omitted). Instead, "that party's uncontested facts and other evidentiary facts of record must still show that the party is entitled to summary judgment." Id.

**IV.  Discussion**

A. Title VII: Hostile Work Environment

Plaintiff Nieves claims he was subject to a hostile work environment because of sexual harassment. Hostile work environment is a form of sexual harassment. See Valentin–Almeyda v. Mun. of Aguadilla, 447 F.3d 85, 94 (1st Cir. 2006). Sexual harassment constitutes sex discrimination prohibited by Title VII. Gorski v. N.H. Dep't. of Corrections, 290 F.3d 466, 472 (1st Cir. 2002). It need not be between members of the opposite sex—same-sex harassment is also actionable under Title VII. See Oncale v. Sundowner Offshore Services, 523 U.S. 75 (1998). The Code of Federal Regulations defines sexual harassment as "[u]nwelcome sexual advances,

requests for sexual favors, and other verbal or physical conduct of a sexual nature." 29 C.F.R. § 1604.11 (2010).

*1. Timeliness*

Before considering the six elements of a prima facie case of hostile work environment, we must consider whether Plaintiffs' claim is time-barred. Defendants correctly state that all discrete actions of alleged harassment occurring more than 300 days before Plaintiff Nieves's February 12, 2015 EEOC charge are time-barred. (Docket No. 33 at 14-15). "Provided that an act contributing to the claim occurs within the filing period, the entire time period of the hostile environment may be considered by a court for the purposes of determining liability." <u>Nat'l R.R. Passenger Corp. v. Morgan</u>, 536 U.S. 101, 117 (2002). Nevertheless, this anchoring act "must itself be discriminatory." <u>Perez v. Horizon Lines, Inc.</u>, 804 F.3d 1 (1st Cir. 2015) (citing <u>Lockridge v. Univ. of Me. Sys.</u>, 597 F.3d 464, 474 (1st Cir. 2010)).

Here, the Court must first determine if the three anchoring acts in Plaintiff Nieves's EEOC complaint are themselves discriminatory. If so, the Court can consider all actions of alleged harassment that occurred more than 300 days before filing the complaint. Namely, those alleged actions that occurred from 2001 until early 2014. For the reasons stated below, the Court finds that no reasonable jury could conclude that the three incidents in Plaintiff Nieves's EEOC complaint and one he testified about the cafeteria—looks, hand touching, and invitations to Álvarez's house—constitute sexual harassment. Thus, all incidents prior to those 2014 incidents are time barred.

*2. Prima Facie burden*

To state a *prima facie* case of hostile work environment under Title VII Plaintiffs must show:

> (1) that she (or he) is a member of a protected class; (2) that she was subjected to unwelcome sexual harassment; (3) that the harassment was based upon sex; (4) that the harassment was sufficiently severe or pervasive so as to alter the conditions of plaintiff's employment and create an abusive work environment; (5) that sexually objectionable conduct was both objectively and subjectively offensive, such that a reasonable person would find it hostile or abusive and the victim in fact did perceive it to be so; and (6) that some basis for employer liability has been established.

Forrest v. Brinker Int'l Payroll Co., LP, 511 F.3d 225, 228 (1st Cir. 2007) (quoting Crowley v. L.L. Bean, Inc., 303 F.3d 387, 395 (1st Cir. 2002)).

When applying the six-part test, the Court evaluates the claim "in light of the 'record as a whole' and mindful of 'the totality of the circumstances.'" Perez–Cordero, 656 F.3d 19, 29 (1st Cir. 2011) (quoting Meritor Sav. Bank, FSB v. Vinson, 477 U.S. 57, 69 (1986)). The elements stated above, although highly persuasive, are not the only criteria used when determining the existence of a hostile work environment. The Court considers several other factors. See Valentin–Almeyda, 447 F.3d at 94. As part of its "totality of the circumstance" analysis, the Court weighs: its frequency, severity, whether it was physically threatening, humiliating, or a mere offensive utterance; and whether it unreasonably interfered with the employee's work performance. Id. (citing Harris v. Forklift Systems, Inc., 510 U.S. 17, 23 (1993)).

Defendants argue that Plaintiffs cannot satisfy the third, fourth, and sixth elements of a prima facie case (based upon sex).

The Court **GRANTS** summary judgment based on the third and fourth elements because no reasonable jury could conclude that the alleged harassment was because of Plaintiff Nieves's gender or severe and pervasive.

*a. Third Element: Based on sex*

Defendants argue that they are entitled to summary judgment because the alleged hostile work environment was not based on sex.

"For harassment to be based on sex it need not be an act motivated by sexual desire but rather the harassment must be gender specific." <u>Gerald v. Univ. of Puerto Rico</u>, 707 F.3d 7, 17 (1st Cir. 2013) (a reasonable jury could conclude that actions were based on sex because "[Defendant] sexually propositioned [Plaintiff], grabbed her breasts, and made comments about engaging in sexual relations with her."). By gender specific, the First Circuit has clarified that "to be redressable under Title VII—the only requirement is that the action must be *because of* the victim's sex." <u>Medina-Rivera v. MVM, Inc.</u>, 713 F.3d 132, 140 n.4 (1st Cir. 2013). "The critical issue . . . is whether members of one sex are exposed to disadvantageous terms or conditions of employment to which members of the other sex are not exposed." <u>Onacle</u>, 523 U.S. at 81; <u>see also</u> <u>Burns v. Johnson</u>, 829 F.3d 1, 17 (1st Cir. 2016) ("decision to transfer [female employee's] duties to a group of male employees . . . supports the inference that Johnson engaged in 'unequal treatment' and 'incidents of nonsexual conduct' that a reasonable jury could find to be of a 'harassing nature' based on sex");

In <u>Zayas-Nunez v. Selectos Campo Rico, Inc.</u>, the court held that a reasonable jury could find that a male employee's alleged harassment against a male plaintiff was based on sex. No. CV 14-1464 (GAG), 2016 WL 1047360, at *6 (D.P.R. Mar. 16, 2016). The court considered the employee's unwelcomed sexual advances, remarks, and acts towards the plaintiff. <u>Id.</u> Most importantly, the court weighed that other male employees had suffered similar sexual harassment by the aggressor, which could allow a jury to conclude that the aggressor targeted the plaintiff because of his gender. <u>Id.</u>

Here, Plaintiffs have offered no evidence showing that Álvarez targeted Plaintiff Nieves because of his gender. Plaintiffs proffer no evidence that would allow such an inference either, like sexual propositions, groping, or comments about engaging in sexual relations—the type of evidence the First Circuit considered in <u>Gerald</u> and the district court in <u>Zayas-Nunez</u>. Moreover, there is no evidence as to "the critical issue": whether Álvarez exposed men to disadvantageous conditions that he did not expose women. If there was evidence of such discriminatory conduct, then a jury could reason that Álvarez targeted Plaintiff Nieves because of his gender and therefore the hostile work environment was based upon sex. But because Plaintiff Nieves fails to provide any evidence that Álvarez targeted him because of his gender, he fails to satisfy the third prong of a prima facie case of hostile work environment.

*b. Fourth Element: Severe and Pervasive*

Defendants also contend that the alleged harassment was neither severe nor pervasive, and if anything, that it amounted to "stray remarks." The Court agrees with Defendants that no reasonable jury could conclude that the conduct was severe and pervasive as a matter given the totality of the circumstances.

To establish a prima facie case of hostile work environment, conduct "must be so severe or pervasive that it amount[s] to a change in the terms and conditions of employment." <u>Burns</u>, 829 F.3d at 18. Moreover, the "sexually objectionable environment must be both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so." <u>Id.</u> To assess if conduct satisfies the "severe and pervasive standard," the First Circuit considers "the severity of the conduct, its frequency, whether it is physically threatening or not, and whether it interfered with the victim's work performance.'" <u>Ponte v. Steelcase Inc.</u>, 741 F.3d 310, 320 (1st Cir. 2014) (citing <u>Gerald</u>, 707 F.3d at 18). Isolated

incidents may suffice if egregious enough, but the Court nonetheless considers if the incident involves a "mere offensive utterance." See Noviello v. City of Boston, 398 F.3d 76, 84 (1st Cir. 2005); Valentin–Almeyda, 447 F.3d at 94.

The First Circuit has held that resting hands on a subordinate's shoulders on two occasions was not severe and pervasive. In Ponte, a supervisor rested his hands on a female subordinate's shoulders while driving her home. Ponte, 741 F.3d at 320. Although "a new female employee feeling her supervisor's unwelcome arm around her shoulder as he insisted on driving her alone back to her hotel after work would feel very uncomfortable," the plaintiff failed to show that this contact was "so egregious as to evince a hostile work environment." Id.

The First Circuit has also held that "conduct was not sufficiently severe or pervasive where, over a two-week period, a coworker stood behind the plaintiff to create physical contact, surreptitiously looked at the plaintiff's genitals in the restroom, and engaged in unwanted touching." Pomales v. Celulares Telefonica, Inc., 447 F.3d 79, 84 (1st Cir. 2006) (citing Morgan v. Mass. Gen. Hosp., 901 F.2d 186, 192-93 (1st Cir. 1990)).

Here, no reasonable jury could find that the four incidents that occurred within 300 days of filing the EEOC complaint were "severe and pervasive." The alleged conduct consisted of three invitations to socialize, and on one occasion touching Plaintiff Nieves's hands in a sexual manner and examining his body. (Docket No. 32-35 at 3). Another instance involves looking at him in a sexual manner at the Hotel cafeteria. (Docket No. 41-4 at 8). But there were no explicitly sexual remarks or propositions. When asked why he perceived that Álvarez spoke to him in a sexual manner, Plaintiff Nieves responded that it was because Álvarez would invite him to his house. (Docket No. 41-3 at 12). But as the evidence shows, Álvarez customarily invited other employees to his house. (Docket No. 32 ¶148-149). Plaintiff Nieves's suggestion "is nothing more than the

sheerest speculation, which is entitled to no weight in the summary-judgment analysis." <u>Medina-Rivera v. MVM, Inc.</u>, 713 F.3d 132, 137 (1st Cir. 2013).

As to touching Plaintiff Nieves's hands in a sexual manner and examining his body, "[o]n the scale of what has been recognized as egregious conduct rising to the required level, this was not close." <u>Ponte</u>, 741 F.3d at 320. This case does not involve a supervisor looking at the plaintiff's genitals in the restroom, <u>see</u> <u>Morgan</u>, 901 F.2d 186, or grabbing the plaintiff's crotch and stating that "it would be great to come with you." <u>See</u> <u>Pomales</u>, 447 F.3d 79; <u>see also</u>, <u>e.g.</u>, <u>Billings v. Town of Grafton</u>, 515 F.3d 39, 47–50 (1st Cir. 2008) (reversing summary judgment for employer where supervisor frequently stared at female employee's breasts); <u>Marrero v. Goya of P.R., Inc.</u>, 304 F.3d 7, 19 (1st Cir. 2002) (affirming jury verdict where supervisor made sexual comments and touched female employee inappropriately on five occasions over one year); <u>Crowley</u>, 303 F.3d 387 (unwanted touching and breaking into female employee's home was severe and pervasive).

The Court acknowledges that it has refused to grant summary judgment in cases with facts similar to Plaintiff Nieves's. <u>See Perez-Rodriguez v. Wyndham Vacation Ownership</u>, No. 12-1287, 2014 WL 651972, at *4 (D.P.R. Feb. 19, 2014) ("Plaintiff affirms '[Maley] just keeps looking at you like he can eat you.'"); <u>Zayas v. Frank Torres-Oquendo</u>, No. 07-2112, 2009 WL 1473506, at *3 (D.P.R. May 27, 2009) (Despite obscene looks and comments about how a woman dresses "barely rises" to the level of severe and pervasive harassment, frequency would allow a jury to find a hostile work environment). Nevertheless, <u>Perez-Rodriguez</u> and <u>Zayas</u> are distinguishable. In <u>Perez-Rodriguez</u>, the looks amounted to a hostile work environment when coupled with comments about anal sex and "perfect" women. <u>See Perez-Rodriguez</u>, 2014 WL 651972, at *9. And in <u>Zayas</u>, the Court was preoccupied with the frequency of the aggressor's

harassment over the course of one month. The alleged harassment in <u>Zayas</u>, which "barely rises" to severe and pervasive, was overtly sexual, unlike the current case. For example, the alleged aggressor in <u>Zayas</u> requested the plaintiff not to wear white slacks "because he was going crazy." <u>Zayas</u>, 2009 WL 1473506, at *1. Five days later he sat next to her and while staring at her commented "that he did not know why he felt so much love for her." <u>Id.</u>

Despite agreeing with Defendants that no reasonable jury could conclude that the alleged conduct was not severe and pervasive, the Court cannot base its conclusion regarding the conduct's severity on the issue of "stray remarks." Instead, the Court notes that Defendants' reliance on precedent regarding "stray remarks" is misplaced.

First, Defendants incorrectly cite the Eighth Circuit opinion from <u>Deneen v. Northwest Airlines, Inc.</u>, 132 F.3d 431 (8th Cir. 1998) as First Circuit precedent. (Docket No. 33 at 15 ("*The First Circuit* has consistently rejected the probative value of stray remarks. <u>Deneen v. Northwest Airlines, Inc.</u>, 132 F.3d 431 (*1st Cir.* 1998)") (emphasis added). The Court advises Defendants to be more careful in the future.

Second, Defendants cite to <u>Santiago v. Canon USA, Inc.</u>, 138 F.3d 1, 6, n.8 (1st Cir. 1998) for the proposition that stray remarks are not probative of sexual harassment. But the cited rule is not from said authority. It appears in a footnote, within a parenthetical, accompanying the citation to <u>Diaz-Gandia v. Dapena-Thompson</u>, 90 F.3d 609 (1st Cir. 1996). In <u>Diaz Gandia</u>, the First Circuit held that direct evidence of discrimination *could not* be dismissed simply as stray remarks *because they were attributed to supervisors*. <u>Id.</u> at 616 (emphasis added).

Finally, Defendant cites <u>Dominguez-Cruz v. Suttle Caribe, Inc.</u> for the rule that "the weight of [stray] remarks 'is circumscribed if they were made in a situation temporally remote from the date of the employment decision or if they were not related to the employment decision in question

22

or were made by nondecisionmakers.'" 202 F.3d 424, 433 (1st Cir. 2000). Defendants' citation is out of context. They omit the following sentence, which states: "But some of these comments were made *by the key decisionmaker* and others were recorded during the decisionmaking process." Id. (emphasis added). This is relevant here because the alleged harasser was Director of Human Resources, and therefore, a jury might consider him a key decisionmaker.

Here, Plaintiff Nieves alleges three invitations to socialize that he perceived as sexual harassment. Whether these were "stray" is a question of fact best decided by the jury given the absence of case law on point, especially because Álvarez was one of Plaintiff Nieves's supervisors. See Diaz Gandia, 90 F.3d at 616. Nevertheless, considering the totality of the circumstances—not just whether the incidents were stray—the Court finds that the alleged harassment was not severe and pervasive.

### c. *Sixth Element: Employer Liability*

Defendants finally contend that even if the Plaintiff suffered sexual harassment, the Hotel should not be liable because it is entitled to the Faragher/Ellerth defense. (Docket No. 33 at 21).

First, the Court must decide whether Defendants are entitled to the defense. In Faragher, the Court carefully specified that "[n]o affirmative defense is available, however, when the supervisor's harassment culminates in a tangible employment action, such as discharge, demotion, or undesirable reassignment." Faragher v. City of Boca Raton, 524 U.S. 775, 808 (1998). As discussed above, a reasonable jury could not find that Plaintiff Nieves suffered sexual harassment by his supervisor, Álvarez. Therefore, there was no harassment capable of culminating in a tangible employment action, and Defendants are entitled to the affirmative defenses.

The affirmative defenses require Defendants to prove "(a) that the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (b) that the

23

plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise." Id. at 807–08. Regarding the first element, "proof of an anti-harassment policy with a complaint procedure available to employees, while not necessarily dispositive, is relevant. Arrieta-Colon v. Wal-Mart Puerto Rico, Inc., 434 F.3d 75, 86 (1st Cir. 2006) (citing Faragher, 524 U.S. at 807).

On the other hand, regarding the second element, a plaintiff's failure to use a complaint procedure "will normally suffice to satisfy the employer's burden under the second element of the defense." Faragher, 524 U.S. at 808. Nevertheless, while relevant, these facts "are not necessarily dispositive." Meritor, 477 U.S. at 72–73. This is especially true when they must report to their aggressor. See id. ("the bank's grievance procedure apparently required an employee to complain first to her supervisor, in this case Taylor. Since Taylor was the alleged perpetrator, it is not altogether surprising that respondent failed to invoke the procedure and report her grievance to him.").

Here, Defendants have a policy against sexual harassment and notified Plaintiff Nieves of that policy. (Docket No. 32 ¶¶2-7). When Plaintiff Nieves filed an internal complaint, Defendants investigated it. Id. ¶¶43-77. While relevant, this is not dispositive evidence that the employer exercised reasonable care. Thus, a jury may conclude that despite these facts, Defendants failed to exercise reasonable care. Moreover, a reasonable jury could also find that Defendants fail to satisfy the second prong. Álvarez was the Human Resources Director. If Plaintiff Nieves were to complain about Álvarez's sexual harassment, he would have had to complain to one of Álvarez's subordinates. (See Docket No. 41-2 at 19). In Meritor, the Court considered a similar fact pattern and held that "it is not altogether surprising that [the employee] failed to invoke the procedure and

report her grievance to [her supervisor]." <u>Meritor</u>, 477 U.S. at 72–73. Thus, whether Plaintiff Nieves's delay in filing a complaint was reasonable is a question better suited for the jury.

In light of the discussion above, the Court finds that Plaintiffs cannot establish a prima facie case of hostile work environment because the alleged harassment was not based on sex and severe or pervasive. Accordingly, the Court **GRANTS** Defendants' motion for summary judgment as to Plaintiffs' hostile work environment claim.

B. <u>Title VII: Retaliation</u>

Plaintiff Nieves alleges retaliation against him occurred when he was transferred to Bella Vista in August, 2014, and when he was terminated in July, 2015.

In retaliation cases, the Court applies the three-step burden shifting framework articulated in <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792 (1973). First, a plaintiff must prove a *prima facie* case of retaliation "by showing that (1) [he] engaged in protected conduct, (2) [he] was subject to an adverse employment action, and (3) a causal connection existed between the first and second elements." <u>Colon v. Tracey</u>, 717 F.3d 43, 49 (1st Cir. 2013).

To prove causation, a plaintiff "must establish that his or her protected activity was a but-for cause of the alleged adverse action by the employer." <u>Univ. of Texas Sw. Med. Ctr. v. Nassar</u>, 133 S. Ct. 2517, 2534 (2013). Although the "but-for causation" requirement "does not require proof that retaliation was the only cause of the employer's action," the plaintiff must show that "the adverse action would not have occurred in the absence of the retaliatory motive." <u>Moreta v. First Transit of PR, Inc.</u>, 39 F. Supp. 3d 169, 181 (D.P.R. 2014) (citing <u>Zann Kwan v. Andalex Grp. LLC</u>, 737 F.3d 834, 846 (2d Cir. 2013). "The determination of whether retaliation was a 'but-for' cause, rather than just a motivating factor, is particularly poorly suited to disposition by summary judgment, because it requires weighing of the disputed facts, rather than a determination

1  that there is no genuine dispute as to any material fact." <u>Zann Kwan</u> 737 F.3d at 846 n. 5. "But

2  given the right set of facts, the court may grant summary judgment where it finds that 'no

3  reasonable factfinder could reach the conclusion that [the] but-for standard has been met.'"

4  <u>Moreta</u>, 39 F. Supp. 3d at 181 (citing <u>Ponte</u>, 741 F.3d at 321).

5       If a plaintiff succeeds at establishing the three elements, the burden shifts to the defendant

6  to "articulate a legitimate, non-discriminatory reason for its challenged actions." <u>Colon</u>, 717 F.3d

7  at 49 (citing <u>Provencher v. CVS Pharmacy, Div. of Melville Corp.</u>, 145 F.3d 5, 10 (1st Cir. 1998)).

8  And if the defendant meets his or her burden, then "the ultimate burden falls on the plaintiff to

9  show that the proffered legitimate reason is in fact a pretext and that the job action was the result

10 of the defendant's retaliatory animus." <u>Id.</u> (citing <u>Fennell v. First Step Designs, Ltd.</u>, 83 F.3d 526,

11 535 (1st Cir. 1996)).  The plaintiff's "evidence [of pretext] must be of such a strength and quality

12 as to permit a reasonable finding that the . . . [challenged employment action] was obviously or

13 manifestly unsupported." <u>Ruiz v. Posadas de San Juan Associates</u>, 124 F. 3d 243, 248 (1st Cir.

14 1997).

15      Plaintiffs' first retaliation claim fails because they are unable to prove causation.  As

16 Defendants point out, Plaintiff Nieves claims retaliation occurred when he was transferred to Bella

17 Vista upon his return from the State Insurance Fund in October 2014.  Nevertheless, this transfer

18 was informed to him in August 2014, before engaging in protected activity in his first complaint.

19 Plaintiff Nieves could not suffer retaliation in August for something he would do in October.

20 Therefore, Plaintiffs' Bella Vista transfer retaliation claim fails.

21      Plaintiffs' second retaliation claim fails because of causation as well. Plaintiffs allege that

22 Plaintiff Nieves was suspended in January because of his complaint against Álvarez and

23 Amengual.  Nevertheless, the undisputed facts show that the Hotel suspended Plaintiff Nieves

because he pressured a co-worker to file a sexual harassment claim against Amengual. (Docket No. 32 ¶¶78-80).

Plaintiffs' third retaliation claim also fails because of causation. Plaintiff Nieves engaged in protected conduct when he filed his antidiscrimination claim in the EEOC in February 2015. Five months later, Plaintiff Nieves suffered an adverse employment action when he was terminated. Nevertheless, the evidence shows that the Hotel had legitimate reasons to terminate Plaintiff Nieves that had nothing to do with filing the EEOC claim. Plaintiff Nieves accumulated ten disciplinary actions before he was terminated. (Docket No. 32 ¶20). In 2015 alone, Plaintiff Nieves asked a co-worker to file a false sexual harassment claim against Amengual, falsified payroll information, and lied about being sick to attend the Caribe Hilton event. (Docket No. 32 ¶¶ 78-80, 104, 106-113). Each of these actions provided independent grounds for termination. (Docket No. 32 ¶¶ 84, 106, 127-129). Moreover, Plaintiffs have offered no evidence of retaliation beyond the fact that Plaintiff Nieves filed a complaint and was terminated four months later, such as negative comments or criticism regarding his claim. See Carrero-Ojeda v. Autoridad de Energía Eléctrica, 755 F.3d 711, 720 (1st Cir. 2014) ("Carrero gives us no facts beyond the timing of her discharge—*e.g.,* no negative comments, complaints, or expressions of reluctance by her superiors or co-workers about her FMLA leave-taking, no discussion of her FMLA leave status in performance reviews, etc.—that would lead us to think that defendants took her FMLA requests or leave status into account when deciding to discharge her."). Thus, in light of the record evidence, no reasonable jury could conclude that Plaintiff Nieves suffered retaliation.

Even if Plaintiff Nieves could prove the Hotel would not have terminated him *but for* filing the EEOC claim, Defendants have met their burden of providing a non-discriminatory reason for his suspension and termination. On the other hand, Plaintiffs have proffered no evidence of

material facts showing that Defendants' decision was pretextual other than a conclusory statement and recognitions for his work prior to filing the EEOC claim. (See Docket Nos. 46 at 48, 41-10). Plaintiffs have offered no facts showing that Defendants' decision "was obviously or manifestly unsupported." Ruiz, 124 F. 3d at 248.

Because Plaintiffs do not satisfy the *prima facie* burden test for retaliation, the Court **GRANTS** Defendants motion for summary judgment as to Plaintiffs' retaliation claim.

C. Supplemental Claims

1. *Laws 100, 69, and 17*

Law 100 and Law 69 prohibit employment discrimination on account of gender. "Puerto Rico's Law 100 is a broad antidiscrimination statute analogous to Title VII in many respects." Perez–Cordero, 656 F.3d. at 26 n. 10. Furthermore, "Puerto Rico's Law 17, which is to be interpreted *in pari materia* with Law 100 and merely identifies with greater specificity conduct that Law 100 already prohibits." Id. (citing Matos Ortiz v. Puerto Rico, 10 F. Supp. 2d, 59, 64–65 (D.P.R. 2000)). See Vargas v. Fuller Brush Co., 336 F. Supp. 2d 134, 142 (D.P.R. 2004) (stating that Law 17 and Law 69 represent more specific prohibitions of what is already prohibited by Law 100 and that all three statutes form a single legislative scheme to create a public policy against sex discrimination); Levine–Diaz v. Humana Health Care, 990 F. Supp. 2d 133 (D.P.R. 2014); Gerald, 707 F.3d at 26–27. Law 17 also protects employees against retaliatory actions taken by an employer due to an employee's participation in the lodging or investigation of a sexual harassment complaint. See P.R. LAWS ANN. tit. 29, § 155h; Matos Ortiz v. Puerto Rico, 103 F. Supp. 2d 59, 63 (D.P.R. 2000) (citing Law 17 supports sexual harassment and retaliation claims).

For the same reasons the Court granted Defendants' motion for summary judgment for Title VII, the Court **GRANTS** Defendants' motions for summary judgment under analogous local statutes.

### 2. *Articles 1802 & 1803 of the Puerto Rico Civil Code*

Plaintiffs also state a cause of action pursuant to Articles 1802 & 1803 of the Puerto Rico Civil Code. These claims are based on the same facts that give rise to Plaintiffs' causes of action under Puerto Rico's special employment statutes discussed above. The Puerto Rico Supreme Court has already stated that Laws 100, 17, 69 & 115 supersede the claims under Articles 1802 & 1803.

> [T]o the extent that a specific labor law covers the conduct for which a plaintiff seeks damages, he is barred from using that same conduct to also bring a claim under Article 1802. An additional claim under Article 1802 may only be brought by the employee-plaintiff if it is based on tortious or negligent conduct distinct from that covered by the specific labor law(s) invoked.

Santini Rivera v. Serv. Air, Inc., 137 P.R. Dec. 1; 1994 P.R. Offic. Trans. 527. This is not a novel issue before the court. See also Reyes–Ortiz v. McConnell Valdes, 714 F. Supp. 234, 239 (D.P.R. 2010); Medina v. Adecco, 561 F. Supp. 2d 162, 174 (D.P.R. 2008).

Plaintiffs base their Article 1802 & 1803 claims on the same conduct that supports the claims under the local employment statutes, and no independent tortious conduct is alleged. Accordingly, the Court **DISMISSES** Plaintiffs' claims under Article 1802 & 1803 of the Puerto Rico Civil Code. As such, the Court **GRANTS** Defendants' motion for summary judgment dismissing Plaintiffs' state law claims under Articles 1802 & 1803 of the Puerto Rico Civil Code.

V.      **Conclusion**

The Court **GRANTS** Defendants' motion for summary judgment at Docket No. 33.

SO ORDERED.

In San Juan, Puerto Rico this 14th day of November, 2017.

/s/ Gustavo A. Gelpí

GUSTAVO A. GELPI

UNITED STATES DISTRICT JUDGE